## RODDEY v. ERWIN.

1. Allegations "that defendant has disposed of the greater part of his property and is about to dispose of the remainder thereof, with intent to defraud his creditors, and has left the State with like intent," are sufficient to sustain a warrant of attachment, when these allegations are made to appear by affidavit and are supported by the matters therein stated. Removal from the State would by itself seem to be an all-sufficient allegation.
2. The cause of action was sufficiently stated here in an affidavit of plaintiff made at the time, together with a former affidavit therein referred to and adopted.
3. Funds in the sheriff's hands belonging to the defendant in execution or attachment, and payable to him, are not protected from attachment

for his debts under the principle of *custodia legis*. Funds of defendant held by sheriff as proceeds of a vacated attachment, may be levied under a second warrant.

4. Whether a warrant of attachment was regularly issued by the clerk of court on sufficient affidavits, must be determined alone by the affidavits submitted to the clerk when he acted.

5. An allegation that defendant has disposed of his property and is about to leave the State, is sustained by defendant's subsequent disposal of his property and removal from the State.

6. Fraudulent intent is a condition of the mind beyond the reach of the senses, and can only be proved by unguarded expressions, conduct, and circumstances.

7. It would seem that affidavits containing averments of facts, based upon information and belief, are sufficient to sustain the issue of a warrant of attachment, where the sources of information are fully and particularly stated. But the allegations of facts showing a fraudulent intent, were *prima facie* sufficient in this case, without the aid of the matters stated as hearsay.

Before WITHERSPOON, J., York, December, 1887.

This was a motion by W. L. Erwin to vacate a warrant of attachment issued against his property by the clerk of court at the suit of W. L. Roddey & Co. The warrant was issued upon the following affidavits :

James F. Reid, one of the plaintiffs above named, being duly sworn, says :

I. That William L. Erwin, the above named defendant, is justly and truly indebted to said plaintiffs, under their firm-name of W. L. Roddey & Co., in the full sum of nine hundred and six dollars and forty-four cents, balance on account for goods and merchandise sold and delivered, and cash advanced by said plaintiffs to said defendant, between August 29, 1885, and October 20, 1887 ; also, by a certain sealed note dated February 18, 1886, in the sum of ten dollars, with interest thereon at ten per cent. per annum, payable annually from date until paid; also, by one certain sealed note, dated May 26, 1886, in the sum of thirty dollars, with interest at ten per cent. per annum, payable annually from date until paid ; also, one certain sealed note, dated June 31, 1887, in the sum of seventy-one dollars and twenty cents, with interest at ten per cent. per annum, payable annually from October 31, 1887, until paid, and which said four several causes of action in favor of said plaintiffs against the said defendant will more fully appear by the sworn complaint in this action hereto

annexed, all the statements contained in which are true to, the knowledge of the deponent.

II. That, as deponent is informed and believes, the said William L. Erwin is disposing of all his property and converting the same into money, with the intention of leaving this State, and that he is disposing of his property with the intention to defraud his creditors, and especially the said plaintiffs, and that the sources of deponent's information are as follows, to wit: on November 3, 1887, deponent was informed by Dr. T. A. Crawford, at Rock Hill, that the said W. L. Erwin was disposing of all his property with the intention of leaving this State and going to Florida; that on November 4, 1887, deponent went out to the said W. L. Erwin's place of residence and saw him, and upon being questioned by deponent gave evasive answers as to his intention of leaving the State, and admitted that he had disposed of all his stock; he also alleged that he was unable to pay anything on plaintiffs' debts against him, and that everything he had had been attached by J. T. Sloan (who is a brother-in-law of the said W. L. Erwin and a resident of Florida), and that he, the said W. L. Erwin, had nothing with which to pay; that deponent then in a few hours called upon the said J. T. Sloan, who admitted to deponent that he had obtained an attachment on the property of W. L. Erwin from W. S. Adams, trial justice, for two hundred and forty dollars; and also alleged that he had paid over to the said W. L. Erwin, in cash, within the last three weeks, over five hundred and seventy-five dollars, and that the said W. L. Erwin had also sold cotton within said time in which his, Erwin's, interest amounted to about six hundred dollars; that on November 4, 1887, deponent was told by James A. Erwin that he had purchased from the said W. L. Erwin his plantation in York County and had settled for same in full a few days ago by assuming the payment of two mortgage debts covering said plantation, and by paying the balance by check on bank. That immediately after obtaining this information deponent returned to find the said W. L. Erwin, but was wholly unable to find him, and deponent verily believes that the said W. L. Erwin has disposed of the greater part of his property, and is about to dispose of the remainder with the intent to defraud his creditors.

III. That the said plaintiffs have commenced an action in this court, by issuing the summons hereto annexed against the said defendant upon the said causes of action.

J. F. REID.

Sworn to November 5, 1887.

Before me personally came James F. Reid, who, being duly sworn, deposes and says:

1. That he is a member of the firm of W. L. Roddey & Co., of Rock Hill, S. C.

2. That J. T. Sloan, a brother-in-law of Willam L. Erwin, on or about November 11, 1887, made an engagement with him to meet him, or the attorney of W. L. Roddey & Co., in Yorkville, S. C., on November 14, 1887, for the purpose of settling a claim the firm of W. L. Roddey & Co. had against the estate of W. G. Erwin.

3. That on November 14, 1887, he went to Yorkville to meet the said J. T. Sloan, but that he, the said J. T. Sloan, did not put in an appearance; and deponent further says that he has been reliably informed, and believes it to be true, that the said J. T. Sloan left this State for the State of Florida on the Sunday previous, November 13, 1887, by private conveyance.

J. F. REID.

Sworn to December 12, 1887.

Personally appeared James F. Reid, one of the plaintiffs above named, and in addition to his affidavit in above case, made and filed in the office of the clerk of the Court of Common Pleas on November 5, 1887, further makes oath that when on November 4, 1887, deponent questioned the defendant, William L. Erwin, as to his intention of leaving this State and going to Florida, he gave an evasive answer by replying that he did not know what he was going to do; that on the next day (November 5) when arrested by W. J. Neely, the deputy of R. H. Glenn, sheriff, in above case, he broke his arrest and was recaptured in Columbia, South Carolina, which fully appears by the return of the said Neely, sworn to November 28, 1887, and now on file in the office of the clerk of the court. That the said William L. Erwin has since left the State, and deponent alleges that the object of the said Erwin in disposing of all his property, and converting it into money and then leaving the State, was to defraud the plaintiffs above named.

That the said Erwin had previously sold and conveyed all his interest in real estate, under his father's will, to his sister, Emily E. Sloan, the wife of J. T. Sloan, of Florida, as appears from deed recorded in the office of the register of mesne conveyances for York County in book E, 6, p. 416, said real estate being located in said county. Said deed was executed in January, 1887, and on the same day the said Emily E. Sloan conveyed to the said W. L. Erwin one hundred and forty-seven acres of land in York County, which the said Erwin has since disposed of.

J. F. REID.

Sworn to December 16, 1887.

Personally appeared T. A. Crawford, who makes oath and says that on October 31, 1887, J. T. Sloan told him that W. L. Erwin had sold his property and intended going with him, J. T. Sloan, to Florida; further, that he, the said J. T. Sloan, had an attachment on the crops of W. L. Erwin, then in the field. The said T. A. Crawford further deposes and says that on November 1, 1887, W. L. Erwin told him that he, W. L. Erwin, had sold all his property, and intended going to Florida with J. T. Sloan.

T. A. CRAWFORD.

Sworn to December 12, 1887.

Personally appeared T. A. Robertson, who makes oath and says, that on Thursday, December 8, 1887, while on the Charlotte, Columbia and Augusta Railroad Company's south bound train, he met W. L. Erwin, who told him that he, W. L. Erwin, was on his way to Florida, and asked that the deponent, T. A. Robertson, say to Messrs. Holler & Anderson, and R. T. Fewell & Co., of Rock Hill, to send their accounts to W. L. Erwin, Pinellas, Florida, and he would pay them.

T. A. ROBERTSON.

Sworn to December 12, 1887.

Upon this motion, the order of the Circuit Judge, omitting its statement of the case, was as follows:

The first ground upon which defendant seeks to set aside the warrant of attachment, as irregularly issued December 16, 1887, is, that it does not appear by the affidavits upon which said warrant issued, that a cause of action exists in favor of plaintiffs against the defendant in the above action. The affidavit of J. F. Reid, dated December 16, 1887, upon which the warrant of that date issued, contains other allegations "in addition to his affidavit in above case, made and filed in the office of the clerk of the Court of Common Pleas on the 5th day of November, 1887." Referring to his affidavit, upon which the first warrant of attachment issued, defendant's counsel insisted, at the hearing, that the affidavit of J. F. Reid, filed November 5, 1887, could not be considered as an affidavit upon which the clerk issued the second warrant, dated December 16, 1887. * * * The second warrant issued by the clerk recites that it was made to appear *by affidavit* that a cause of action existed in plaintiffs' favor. The affidavit of J. F. Reid, filed with the clerk in above case, November 5, 1887,

and referred to and made a part of Reid's affidavit, upon which the second warrant issued, was the only source from which it could be made to appear, by *affidavit*, to the clerk, that a cause of action existed in plaintiffs' favor.    I conclude, as matter of fact, that the clerk did consider the affidavit of J. F. Reid, dated and filed in his office November 5, 1887, in issuing the warrant of attachment dated December 16, 1887.    The plaintiffs were permitted at the hearing to introduce the affidavit of J. F. Reid, filed November 5, 1887, as one of the affidavits upon which the second warrant issued.    The defendant gave notice of exception to this ruling.

Another ground upon which defendant seeks to set aside the second warrant of attachment as irregularly issued, is that the affidavits failed either to set forth facts within the personal knowledge of affiant, or the sources of information, or the facts upon which affiants based their belief, or facts sufficient to show that deponent was dealing, or had dealt, with his property in the manner prohibited, and with fraudulent intent.    According to the decisions of our courts upon the motions to vacate attachments, I conclude that affidavits upon which warrants of attachment are authorized to be issued, should state such facts as, according to the *rules of evidence* in an *action of law*, would be competent to make out a *prima facie* case that a party had, or was about to dispose of his property in a manner prohibited by the statute.

The mere disposition by a debtor. of his property would not authorize the issuing of an attachment, unless such disposition of property *prima facie* was accompanied by an intent to defraud creditors.    The affidavit of J. F. Reid, upon which the first attachment was issued, has been held to be insufficient.    Did the additional affidavits above referred to, upon which the second warrant issued, considered in connection with the affidavit of J. F. Reid, filed November 5, 1887, furnish sufficient evidence to authorize the clerk to issue the warrant December 16, 1887 ?    The ground upon which the last attachment was issued, is the allegation by affidavit that the defendant "has disposed of the greater part of his property, and about to dispose of the remainder thereof with intent to defraud his creditors, and has left the State with like intent," as recited in said warrant.    As *hearsay*

*evidence* would be incompetent to establish a *prima facie* case at law, such evidence should not be considered in determining the sufficiency of the affidavits upon which a warrant of attachment has been issued.

Excluding the declarations of J. T. Sloan and J. A. Erwin, referred to in the affidavits of J. F. Reid, and what facts or circumstances are stated within the knowledge of the affiant that would indicate that the defendant had disposed of his property with intent to defraud his creditors? The affiant states that defendant gave him evasive answers as to his intention to leave the State; that defendant admitted to deponent that he had disposed of his stock; that he was unable to pay plaintiffs' debt; that his brother-in-law, J. T. Sloan, had attached all his property; that defendant had gone to Florida, where his brother-in-law, Sloan, resided. Excluding the declarations of J. T. Sloan, referred to in the affidavit of T. A. Crawford. and the only competent evidence furnished by the affidavit of T. A. Crawford is, that on November 1, 1887, the defendant told deponent that he had sold all his property and intended going to Florida with J. T. Sloan.

According to the affidavit of T. A. Robertson, as the defendant was leaving Rock Hill, on the train, December 8, 1887, on his way to Florida, he asked deponent to say to certain of his creditors in Rock Hill to send their accounts to him at Pinellos, Florida, and he would pay the same. Would this evidence, in an action at law, be sufficient to establish *prima facie* the fact that defendant had disposed of his property and left the State with intent to defraud his creditors? I think not. It is the voluntary admission of the defendant, which seems to me to negative an intent to defraud his creditors.

I conclude that the evidence furnished by the affidavits of J. F. Reid, T. A. Crawford, and T. A. Robertson, upon which the warrant of attachment was issued by the clerk of the court in the above case, December 16, 1887, was not sufficient to authorize the clerk to issue said warrant.

In this view it will not be necessary to consider the affidavits submitted by defendant in support of the ground that the attachment issued December 16, 1887, was improvidently issued.

I do not think that the position of defendant's counsel, that the fund in the sheriff's hands could not be attached, can be sustained. The fund in the sheriff's hands was derived from a sale under an order in the first warrant of attachment, issued November 5, 1887. After the order of December 14, 1887, vacating the first attachment, the defendant was entitled to the fund in the sheriff's hands. I think it was liable to be attached by any creditor of the defendant.

It is ordered and adjudged, that the warrant of attachment, issued December 16, 1887, by Joseph F. Wallace, clerk of court, against the property of the defendant, William L. Erwin, in the above entitled cause, be and the same is hereby set aside and vacated, with ten dollars cost of motion to said defendant, William L. Erwin.

Plaintiffs appealed from this order upon the several grounds set out in the opinion of this court.

*Messrs. Wilson & Wilson,* for appellants.

*Mr. W. B. McCaw,* contra.

April 15, 1889. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On November 5, 1887, the plaintiffs sued the defendant on several claims, amounting in the aggregate to something over $1,000, and at the same time the clerk of the court for York County, at the instance of the plaintiffs, and upon the affidavit of J. F. Reid, a member of the firm, issued an attachment against the defendant, alleging that he was disposing of his property and converting it into money, with intent to leave the State and defraud his creditors. Certain perishable property of the defendant was attached and sold under the order of the court by the sheriff, who was directed to hold the proceeds subject to the further order of the court. On December 14 (1887), this attachment was *set aside* upon defendant's motion, on the ground of the insufficiency of the affidavit on which it issued.

On December 16, 1887, a second warrant of attachment in the same case was issued by the clerk upon additional affidavits of J.

F. Reid, T. A. Crawford, and T. A. Robertson. (These affidavits should be a part of the case reported.) Under this second warrant the aforesaid funds in the hands of the sheriff, $272.52, arising from the sale under the first warrant, were attached, and on December 24, 1887, the defendant moved before Judge Witherspoon to set aside this attachment also, on the grounds that it was irregularly and improvidently issued : (1) that the affidavits failed to set forth a cause of action ; (2) that they failed to set forth facts within the personal knowledge of the affiants ; (3) that they failed to state fully the sources of their information or the facts upon which affiants based their belief, &c. ; that the facts stated were untrue ; and that the property attached ($272.-52) in the hands of the sheriff under the order of the court, was not subject to attachment, &c. The judge holding that "as hearsay evidence would be inadmissible to establish a *prima facie* case of fraud at law, such evidence should not be considered in determining the sufficiency of affidavits upon which an attachment had issued ;" and disregarding the affidavits so far as the source of information given was the statement of others, *held* that the affidavits were not sufficient to authorize the clerk to grant the attachment, and set it aside upon the ground that it had been irregularly issued.

From this order the plaintiffs appeal to this court upon the following grounds :

"1. Because when the attachment was issued the defendant had left the State, having gone to Florida to reside.

"2. That the affidavits upon which the attachment issued were sufficient to show that the defendant had disposed of all his property and left the State, with the intent to defeat the appellants' debt, and were sufficient to establish a *prima facie* case at law.

"3. That said affidavits were a sufficient compliance with the provisions of the attachment law.

"4. That the facts proved showed collusion between the defendant and his brother-in-law, J. T. Sloan, to defeat the claim of appellants.

"5. Because his honor erred in holding that the 'voluntary admissions' of the defendant negatived any fraudulent intent towards the appellants.

"6. Because the motion to vacate the attachment should have been decided in the light of all the evidence before the court.

"7. Because his honor erred in holding that hearsay cannot support an attachment, even when the would-be incompetent sources of information are stated.

"8. Because his honor erred in holding that 'as hearsay evidence to establish a *prima facie* case at law, such evidence should not be considered in determining the sufficiency of an affidavit upon which an attachment has been issued."

Section 250 of the Code declares that "a warrant of attachment may be issued whenever it shall appear by affidavit that a cause of action exists against such defendant, specifying the amount of the claim and the grounds thereof, and that the defendant is either a foreign corporation or not a resident of this State, * * or that such corporation or person has removed or is about to remove any of his or its property from this State with intent to defraud his or its creditors, or has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, any of his or its property with like intent, whether such defendant be a resident of this State or not," &c. There can be no question that the allegation here was ample under the law, "that the defendant has disposed of the greater part of his property, and is about to dispose of the remainder thereof, with intent to defraud his creditors," and "has left the State with like intent." Indeed, we do not clearly see why it would not have been sufficient to confine the allegation to the last paragraph of absence from the State, in conformity with what, under the old practice, was called a foreign, as distinguished from a domestic, attachment.

We agree with the Circuit Judge, that the affidavits stated a cause of action, specifying, as required, the amount of the claim and the grounds thereof. This was done fully and most circumstantially in the first affidavit of J. F. Reid (Nov. 5, 1887), before the first attachment was issued. Afterwards, when the second writ was issued, on December 16, he made another affidavit, adopting and adding to the first one, saying, "and in *addition* to his affidavit in the above case made and filed in the office of the clerk of court on November 5, 1887, further makes oath," &c., &c. There is not the slightest doubt of the identity of the affi-

davit, and that it was before the clerk of the court when he issued the second warrant, who inserted in the warrant itself a very full description of the cause of action.

We also agree with the Circuit Judge, that there is nothing in the objection that the funds in the sheriff's hands were not subject to attachment. After the first attachment was set aside, the money raised by the sale in that case ($272.52) belonged to the defendant, and might have been turned over to him, but the sheriff properly held it for the further order of the court. "The principle of *custodia legis* applies only where the officer is bound to pay the execution plaintiff, and not to cases in which he has in his possession, after satisfying the execution, *a surplus*. Such surplus is the property of the execution defendant, and being held by the sheriff in a private and not an official character, it may be attached in his hands." See *Drake on Attachments*, (16th edit.), section 281, and cases cited; and 1 *Am. and Eng. Encycl. Law*, 916, and notes.

The only remaining question is, whether the allegation, in the language of the law, "was made to appear by the affidavit," or the warrant was irregularly issued. Certainly there can be no valid attachment without a sufficient affidavit, and whether sufficient in the first instance, new facts or new grounds to sustain it cannot be brought before the judge in behalf of the plaintiff. We can hardly suppose it necessary to say anything as to the allegation that defendant disposed of his property with a view to leave the State. That has been shown by the event itself. The defendant has disposed of his property and he has left the State. Facts cannot err. Then the only matter of inquiry left is, whether it was shown, *prima facie*, that it was done with the intent to defraud his creditors, and especially the plaintiffs.

Fraudulent intent is not a physical entity which can be seen and felt, but a condition of the mind beyond the reach of the senses—usually kept secret—not very likely to be confessed, and therefore can only be proved by unguarded expressions, conduct, and circumstances generally. As was said in *Myers* v. *Whiteheart*, 24 S. C., 196: "The allegation that a person has done a certain act, with a fraudulent intent, must necessarily be based upon information or belief, and therefore, in such a case, the rule is

well settled that the sources of information, or the facts on which such belief is founded, must be stated." This is undoubtedly a wise rule; but when in obedience to it, a party gives as the source of his information, the statement of another, giving his name, place, &c., we very much doubt whether in a proceeding like this, such statement should be brushed away as "incompetent," because as "hearsay" it would not be admissible in a regular trial at law. We can hardly think that such was the intention of the rule requiring the sources of information to be given; but that all the circumstances—especially upon a question of fraudulent intent where there may have been concert and combination—should be considered, giving to each the weight. great or small, to which it is entitled. *Burch* v. *Brantley*, 20 S. C., 506. It was certainly in conformity to the rule as to the sources of information to include these statements in the affidavits.

But inasmuch as the Circuit Judge took another view, and expunged from the affidavits all statements of information received from others, and especially from J. A. Erwin. the brother, and J. T. Sloan, the brother-in-law of the defendant, let us see how, in that view, the matter as to the fraudulent intent stands. On December 16, 1887, when the second attachment was issued, five affidavits on the part of the plaintiffs were before the clerk, as his authority for issuing the writ. Admonished probably by the first failure, the affidavits seem to have been drawn with care and particularity. No. 1, J. F. Reid's first affidavit (Nov. 5) was before the defendant went to Florida, and states that he is informed and verily believes that the defendant had disposed of the greater part of his property, and is about to dispose of the remainder, with the intent to defraud his creditors, and gave circumstantially and in detail the sources for such beliefs; that upon being informed by Dr. T. A. Crawford that defendant was disposing of his property with the intention of leaving the State and going to Florida, he went to see defendant, and upon being questioned about going to Florida, he gave "evasive answers," saying he "did not know what he was going to do;" that J. T. Sloan (his brother-in-law and a resident of Florida) had attached everything he owned, &c. (omitting what Sloan and J. A. Erwin told him). No. 2, Reid's second affidavit (December 12), states that

about November 11 there was an agreement to meet J. T. Sloan at Yorkville, November 14, for the purpose of settling the claim of plaintiffs; that Sloan failed to keep his engagement, and he, the deponent, has been reliably informed, and believes it to be true, that Sloan left the State for Florida on the Sunday previous (November 13) by private conveyance, &c. No. 3, Reid's third affidavit (December 16), states that on the day after his previous interview with defendant (November 5), when he was arrested, defendant broke his arrest, and was recaptured in Columbia, S. C.; that the defendant has since left the State, and deponent alleges that his object in disposing of his property and turning it into money and then leaving the State was to defraud the plaintiffs; that he previously sold his interest under his father's will to his sister, Mrs. Sloan, wife of J. T. Sloan, of Florida, as appears from deeds recorded. This deed was executed in January, 1887, and on the same day Mrs. Sloan conveyed to him 147 acres of land in York County, which he has since disposed of, &c. No. 4, Dr. T. A. Crawford's affidavit (omitting what Sloan told him), states that on November 1, 1887, the defendant told him that he had sold all his property and intended going to Florida with J. T. Sloan, &c. No. 5, T. A. Robertson's affidavit, states that on Thursday (December 8), while on the Charlotte & Columbia south-bound train, he met the defendant, who told him that he was on his way to Florida, and asked that the deponent would say to Höller & Anderson and R. T. Fewell & Co., of Rock Hill, to send their accounts to "W. L. Erwin, Pinellas, Florida," and he would pay them.

It appears from the affidavits all considered together, it seems to us, that when Mr. Reid first spoke to the defendant about the plaintiffs' claim, on November 4, 1887, he had already disposed of most of his property, and was preparing to go to Florida, but that he concealed such purpose from the plaintiffs by giving "evasive answers;" that the appointment with J. T. Sloan for a meeting at Yorkville on November 14, to settle the plaintiffs' debt, was made also for the purpose of misleading the plaintiffs, and giving him time to get off to Florida, as shown by the fact that he did actually leave in a private conveyance on Sunday, November 13, the very day before the meeting was to have taken place

in Yorkville; that the defendant left hurriedly, and on his way to Florida (December 8), Thursday, met Mr. T. A. Robertson on the C. C. & A. Railroad, and, after informing him that he was on his way to Florida, requested him (Robertson) to inform certain of his creditors at Rock Hill (making no mention, however, of the plaintiffs) to send their accounts "to W. L. Erwin, Pinellas, Florida, and he would pay them," or something of that character. From simply reading the affidavits, with attention to the dates, we cannot doubt that the defendant misled the plaintiffs as to the disposal of his property and his intention to leave the State, that the clerk was authorized to issue the attachment, and that it was error to set it aside as irregularly issued.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded for such orders as may be necessary to carry out the conclusions herein announced.