## YOUNGER v. MASSEY.

1. FINDINGS OF FACT—FRAUD.—Where a debtor made a deed to his father-in-law on an alleged large consideration long past due, retaining possession as agent by written appointment, and without information given to any one of the transfer; where the debtor had made statements of his indebtedness, omitting any mention of this; where the father-in-law made large payments to this debtor during several years of this alleged indebtedness, asking none of it as credits; and where a reconveyance was made of the greater part of this property, and the original debt was revived by agreement on the eve of an assignment by the debtor—from these and other circumstances, this court agreed with the finding of fact by the Circuit Judge, from testimony heard by him, that the transactions between these parties were fraudulent as to creditors of this debtor.

2. ASSIGNMENT—PROPERTY RETAINED.—The first deed being fraudulent and the second deed having reserved a portion of the property covered by the first deed, which reserved property was not included in the deed of assignment, the deed of assignment was, for this reason, void. A present offer to have this property now reconveyed cannot validate an assignment which was void at the time because of this reservation.

Before IZLAR, J., York, July, 1892.

This was an action by L. C. Younger against Henry Massey, Frank H. Brown, and Joseph F. Wallace, commenced May 24, 1892. The Circuit decree fully states the case. It was as follows:

This action was commenced on the 25th day of May, 1892,

by the plaintiff, a judgment creditor of the defendant, Henry Massey, lately a merchant doing business at Tirzah, in said county and State, under the name and style of H. Massey & Co., to set aside as fraudulent and void certain deeds executed by the said Henry Massey; for the appointment of a receiver; to call in the creditors of Henry Massey, and to allow them to establish their several and respective demands in this cause; to require the defendant, Frank H. Brown, to account for all moneys received by him from sales of parts of the stock of merchandise of Henry Massey, between the 17th day of November, 1891, and the 16th day of February, 1892; and also for all goods taken out of said stock for his own use, and for general relief. The defendants by their answers deny the material allegations of the complaint.

The case was heard before me at the July term, 1892, of the Court of Common Pleas for said county. The testimony was taken in open court at the hearing, and was afterwards written out by the stenographer. The principal questions for consideration are in relation to the *bona fides* of the deeds executed by Henry Massey to his father-in-law, Frank H. Brown, and to Joseph F. Wallace, assignee. Were these deeds executed in good faith, or were they executed with intent to hinder, delay, defeat and defraud the plaintiff and other creditors of Henry Massey, and to give to the said Frank H. Brown an unlawful preference over Massey's other creditors? It seems to me, after a careful study of the transactions between Henry Massey and Frank H. Brown (keeping in view the fact that these transactions were had between son-in-law and father-in-law), impossible to arrive at the conclusion that these transactions were had in good faith, and were not entered into to give Frank H. Brown an unlawful advantage over the other creditors of the defendant, Henry Massey. No matter how fair these transactions may appear on their face, the manner in which they were carried out, and all the circumstances surrounding the parties at the time, impress me with the belief that the whole was a carefully devised scheme to defeat the other creditors of Henry Massey, and to save to himself that property which rightly and justly belonged to them, by trans-

ferring the same to his father-in-law through a conveyance apparently *bona fide* and for valuable consideration.

This view is, I think, fully sustained by the evidence. The proof shows that Henry Massey was largely indebted at the time; that his entire property and assets were insufficient to pay his debts; that his creditors were pressing for payment, demanding security and threatening suit, and that he was embarrassed in his business and straitened in his finances. Under these circumstances, he conveys away his stock of goods, wares and merchandise, and the bulk of his real estate, to his father-in-law, who was certainly cognizant of his failing circumstances, of the confused state of his affairs, and of his inability to meet his business engagements and to pay his debts. This transfer was made with unusual haste, and with comparative secrecy. His immediate neighbors, much less the general public, were not aware of the change in his business. Everything went on and was conducted the same as before the transfer. Pending the proceedings by which he was endeavoring to put his property beyond the reach of his creditors, the plaintiff and other creditors were lulled into security by vain promises, and quieted with the fallacious assurance that he would make no disposition of his property. And it was not until after the plaintiff had gone into court, obtained judgment, and was proceeding to enforce the same by execution, that he is made aware of the transfer of the 17th of November, 1891, and confronted with the serious and startling fact that his debtor has no property out of which the amount due and owing to him can be realized.

How is this proof met by the defendants, Henry Massey and Frank H. Brown? An attempt is made to show that the defendant, Henry Massey, was justly due and owing his father-in-law for moneys theretofore advanced and paid out for him; that the sum so advanced and paid constituted the consideration of the said deed of conveyance, and that this sum exceeded the value of the property conveyed; that the deed was withheld from record for the purpose of obtaining the dower of Mrs. Massey, and not with a view of concealing its existence; and that the property transferred thereby constituted only a portion of the property, real and personal, of the defendant, Henry

Massey. Now, the fact that Henry Massey did not consider the debt to his father-in-law a liability which he would be called upon to pay, is fully sustained by the evidence. That Frank H. Brown never expected to call upon his son-in-law for the payment of this debt, is clearly shown by his conduct and manner of dealing with him. The debt arose in February, 1887. From that time to November, 1891, these parties had dealings with each other involving large sums of money; settlements were made annually; yet the said Frank H. Brown makes no mention of this debt, asks no security and demands no settlement. Notwithstanding all this, it is now sought to impress the court with the idea, that Frank H. Brown, in obtaining a conveyance of the bulk of the property of his son-in-law, was only doing what a prudent and honest creditor would have done to save his debt.

It does not strike me that the saving of his debt was the sole object which Frank H. Brown had in view in these transactions with his son-in-law. I am impressed with the belief, that there was behind all these transfers the ulterior object of saving the property of the son-in-law, by throwing between it and the process of the courts the shield of an apparent *bona fide* conveyance; and that this object was carefully concealed, not only from the creditors of the son-in-law, but, also, from the able and distinguished counsel, who prepared the conveyance and advised with the parties. Again, the property not covered by the said conveyance, after taking out the homestead and personal property exemption, amounts to a very small and insignificant sum. So that, practically, the transfer was of all the property, real and personal, of Henry Massey which could be reached by execution at law, and was, doubtless, so intended to be.

As evidence of good faith, and to show change of possession, a paper bearing even date with the conveyance, signed by the said Frank H. Brown, appointing Henry Massey his agent and clerk in the store at Tirzah, was introduced. But there is no proof that this paper was ever exhibited to any person prior to the 25th day of November, 1891. A clerk formerly in the employ of Henry Massey testifies that he was told of the transfer

to Frank H. Brown, but that he kept this information to himself. With all the proof before me, I cannot regard this paper as conclusive of the fact or facts sought to be established by it. It appears upon the face of the conveyance that the property was transferred in consideration and satisfaction of a precedent debt.

Chancellor Harper, in *Smith* v. *Henry* (1 Hill, 25), says: "The true view seems to me to be this: The law allows a debtor to give a preference to one creditor over another, and this is giving latitude enough, but it will not allow him to secure an advantage to himself at the expense of creditors as the price of such preference." In this case a distinction is made between a case where a person buys goods of an insolvent and advances money at the time, and leaves them in the possession of the vendor, and a case where the goods are given in satisfaction of a previous debt, and left in the possession of the vendor. In the former case, Chancellor Harper was, then, of the opinion, that the circumstance that the goods are left in possession of the vendor might be explained; in the latter case, that that of itself would be conclusive evidence of fraud. And this, says the learned chancellor, is founded upon the most obvious reason—because the vendee gains a most important advantage. "He is secured at the expense of other creditors."

In *Jones & Briggs* v. *Blake and wife*, 2 Hill Ch., 636, the same distinguished chancellor, in discussing the case of *Smith* v. *Henry, supra*, says: "The principle of that decision, as it is expressed in very terms is, that the law allows a debtor to give a preference to one creditor over another, but it will not allow him to secure an advantage to himself at the expense of creditors, as the price of such preference." That is, an "advantage in relation to property, profit, or pecuniary advantage." In this case, notwithstanding the slaves were delivered in satisfaction of a precedent debt, yet it was held that the retention of possession by the vendor might be explained by satisfactory evidence. The distinction laid down as a conclusion in *Smith* v. *Henry*, does not seem to have been observed and followed. I conclude, therefore, that the distinction above referred to, as laid down by Chancellor Harper in *Smith* v. *Henry*, no longer

prevails, and that now the rule may be stated as held in *Nelson & Co.* v. *Good*, 20 S. C., 223.   It is there held, that insolvency of the vendor of personal property, pending of suits against him, the sale of his property, and retention of the goods sold to all appearances as owner, constitute such strong evidence of fraud, that they will be regarded as conclusive unless explained by the most satisfactory testimony, but are not presumptions of fraud irrebuttable by any evidence.

Fraudulent intent is a condition of the mind beyond the reach of the senses, usually kept secret, and can only be proved by unguarded expressions, conduct and circumstances generally. *Roddey* v. *Erwin*, 31 S. C., 36.   The indebtedness of Massey to his father-in-law, it would seem, is a *bona fide* indebtedness, but this cannot validate the conveyance, if the purpose of the deed was to shield the property of Massey from his creditors, and thereby defeat their just demands.   *Lowry* v. *Pinson*, 2 Bail., 328.   The conduct of Brown in regard to this indebtedness, lent to Massey a delusive credit, by which Massey was enabled to carry on his mercantile business.   Under these circumstances, is he to be preferred and protected, while others, who parted with their property "on liberal terms and in manly confidence," are made to suffer?

The rule which sanctions preferences, though long established, should, in its application, be watched with jealousy, and should not, by any reasons of expediency or justice, be enlarged, by giving it a new and dangerous facility.   Such was the view of Chancellor Kent in *Riggs* v. *Murray*, 2 John. Ch., 577. · Now, notwithstanding there is some evidence tending to explain the retention of possession by Massey, and that this possession was as the agent of Brown and not for the benefit of Massey, the proof, to my mind, is not so clear and satisfactory as to rebut the presumption of fraud arising from such possession, especially when considered in connection with the other badges of fraud discovered in the case.   The fact that this agreement to engage Massey as agent was kept secret, that it fixed no compensation, and that none was demanded or paid, together with other evidences of fraud, incline me to the belief that this agreement was merely colorable.   To use the language

of Judge O'Neall in *Smith* v. *Henry* (2 Bail., 124): "The evidence, in explanation, ought to be so clear as to leave no room to doubt the fairness of the sale." I find no difficulty, therefore, in arriving at the conclusion, that the conveyance of Henry Massey to Frank H. Brown, of date the 17th of November, 1891, is fraudulent in respect to the general creditors of Henry Massey.

The deed of assignment executed by Henry Massey to Jos. F. Wallace, bearing date the 16th day of February, 1892, must now be considered. The evidence is, that on the ninety-first day after the transfer by Massey to Brown, the latter reconveys by deed to the former a portion of the property mentioned in the conveyance of the 17th November, 1891. The deed of reconveyance is without warranty, and without the renunciation of dower of Brown's wife. The consideration is the four notes of Massey, which had been satisfied by the original conveyance to Brown. On the same day that Brown executes the deed of reconveyance to Massey, Massey executes to Joseph F. Wallace a deed of assignment for the benefit of his creditors. As to this deed, I have no hesitation in pronouncing it, also, fraudulent as to the general creditors of Henry Massey. It must, from the very nature of the case, "savor of the transaction with which it was connected." By the course pursued, it was evidently intended by the parties, who were acting in concert, and with a full knowledge of the situation, that the father-in-law should gain an important pecuniary advantage over the general creditors of the son-in-law.

What are the facts? The fate of the deed of November 17th, 1891, was becoming doubtful. Its *bona fides* had been questioned by actions on behalf of creditors both in the State and United States courts. For good reasons the action in the United States Circuit Court had been discontinued, only to be commenced again in another form in the State court. Actions in the State courts by certain creditors to recover large and considerable sums were pending. The attack upon the validity of the conveyance of the 17th November, 1891, was likely to be renewed as soon as the suing creditors obtained judgments, and the executions thereon were returned unsatisfied. That such an attack

16—39

was anticipated by Massey and Brown, there is hardly room for serious doubt, when all the circumstances are carefully considered. If this anticipated attack proved successful, the preference which Massey intended to give Brown over his other creditors would be defeated, and the advantage which Brown expected to gain from such preference would be lost. It, therefore, became necessary to frustrate the result which would be likely to follow.

Under these alarming circumstances, but one way seemed open, and that was traveled. When ninety days had elapsed from the making of the original transfer, a partial reconveyance promptly takes place, and the general assignment by Massey immediately follows. By this course, it was understood that the debt of Massey to Brown, which had been satisfied by the original conveyance, would be revived, and that Brown would then be in a position to protect his son-in-law, either by purchasing the whole estate, or by securing the bulk thereof in the distribution among the general creditors. For it must be remembered, that in the assignment Massey reserved the right to his homestead exemption, and that the claim of Brown amounted to $15,000, besides interest, while the indebtedness of Massey to his other creditors amounted only to $10,000. In this way there was to be a saving to Massey through Brown of a large and considerable sum on a debt, the larger part of which Massey never expected to be called upon by Brown to pay, and which Brown never expected to demand of Massey—a conclusion not only consistent with the conduct of the parties, but supported by the evidence.

Viewed in this light, I have no difficulty in finding a motive for the reconveyance and assignment, or in determining the character of the transaction. In the light of the facts, the reconveyance and assignment have a distinct object, namely, to further the original scheme. Without considering the provision of the assignment, which requires "that releases to be effectual shall be filed with the assignee within twenty-one days from the day fixed by the assignee for the first meeting of the creditors," I am forced to the conclusion that the said deed was not free from fraud in its inception. It is clear to my mind,

that it was calculated to hinder, delay, and defraud the creditors of Henry Massey, and that it was so intended. It was but a perpetuation of the original fraud.

The provision of the assignment above referred to, however, conferred a power upon the assignee which might have been abused, and rendered subservient to fraud. A very large majority of the creditors of Massey resided abroad, and many of them at a great distance, while Brown, whom he desired to favor, and through whom he hoped to be benefited, was on the grounds watching the proceedings, and prepared to act. About one-third of the creditors filed releases with the assignee, among whom is Frank H. Brown, whose debt is put at $17,637, while the debts of the others will not exceed $6,000 in the aggregate. The time within which creditors are limited to become parties to an assignment, or to assent thereto, must be reasonable. This must be determined by the facts in each individual case. I am not prepared to say, under the circumstances of this case, that twenty-one days from the first meeting of the creditors of Massey was a reasonable time for these creditors who lived abroad to accept the terms of the assignment and file their releases. Prudent and cautious business men never act hastily and without investigation, especially in matters of this nature. It takes weeks, and frequently months, to obtain information upon which business men of ordinary prudence can act intelligently and safely.

One other question is presented by the argument which demands notice. It is contended for the plaintiff that the indebtedness of Massey to Brown, as evidenced by the four promissory notes, was extinguished by the deed of November 17, 1891. It is true, that said conveyance recites that it was made "in consideration of said indebtedness and in payment of said notes." It is also true, that Massey, in consideration of the reconveyance of the property by Brown, agrees in writing to revive his indebtedness to Brown as it stood before the making of said deed. With this evidence before me, I am not ready to hold that the indebtedness of Massey to Brown was not revived and set up again, or that it could not be revived and set up again in this way. Between Massey and Brown the contract must be con-

sidered as valid and binding. Its effect as to the existing creditors of Massey may be involved in doubt. I think, however, that the position of existing creditors is substantially the same as it would have been had the reconveyance not been made, and the original deed had been declared fraudulent and void as to them. I was impressed with this view at the hearing, and subsequent investigation and study has tended to rather strengthen than weaken this conviction.

In *Johnston* v. *S. W. R. R. Bank*, 3 Strob. Eq., 263, there was a transfer and delivery of assets by the Ocmulgee Bank to the defendants to secure a pre-existing debt. The transfer was set aside as fraudulent, but it was adjudged not to be a forfeiture of the debt. Chancellor Dunkin, in delivering the opinion of the court of errors, said: "A party can be permitted to derive no advantage from his own wrong. This seems the extent of the rule. The S. W. Railroad Bank must be permitted to establish their claim like any other creditor of the Ocmulgee Bank." On this point the court differed with Chancellor Johnston, who wrote the circuit decree, and postponed the demands of the defendants until *bona fide* creditors were paid. The position taken by Chancellor Johnston in his circuit decree was stubbornly maintained in the able and vigorous dissenting opinion, in which he reviews our own cases, and concludes that the doctrine contended for by him "is a doctrine conformable to justice and sound policy, and goes not one whit beyond the spirit of the decisions by which they were intended to be upheld and supported."

In *Dickinson* v. *Way*, 3 Rich. Eq., 412, it was held that where a judgment confessed for a much larger sum than is actually due, and intended not only to secure the amount actually due, but also to defeat other creditors, is set aside at the instance of a creditor for the actual fraud, the whole judgment is set aside, so far as creditors are concerned, and the plaintiff must stand upon his original indebtedness. Chancellor Dunkin says: "One of the grounds on which the judgment of Rice was set aside, was its tending to prevent the other creditors of Way, by simple contract or otherwise, from pressing their demands to judgment, and so far as creditors are concerned he cannot be per-

mitted to derive any advantage from his lien, but must stand on the original indebtedness and come in ratably with the other existing creditors of Way." So that it would seem that the rule is, that where a judgment or conveyance is set aside for fraud, the original indebtedness of the creditor intended to be preferred by such judgment or conveyance is not forfeited, but remains unaffected; and that such creditor is not permitted to derive any advantage from his fraudulent security, so far as other creditors are concerned, but must stand on his original indebtedness, and share *pari passu* with other creditors.

But while this is so, I am still of the opinion that cases may arise where, from the peculiar nature of the facts found, the court in its discretion would be fully warranted in refusing to allow to any *particeps criminis* "any part of his debts or advances out of the property or funds improperly in his hands until the innocent creditors, whom he intended to injure, are made whole." The maxim that "Circumstances alter cases," is as sound and truthful as it is old and familiar. I do not wish, however, to be understood by what I have said on the subject, as postponing the demands of the defendant, Frank Brown, until those of all other *bona fide* creditors of Massey are paid. Under the changed state of affairs, Brown may not avail himself of the opportunity here given to the creditors of Massey to move against the funds in the hands of the defendant, Joseph F. Wallace, or the funds for which he is made liable. It will be time enough when the claims of Brown are presented for proof, to determine whether or not, under the facts of this case, he should be allowed to come in and share *pari passu* with the *bona fide* creditors of Massey, and to what extent, or should be postponed until the *bona fide* creditors are paid.

It is, therefore, ordered, adjudged and decreed, that the deed of conveyance executed by the defendant, Henry Massey, to the defendant, Frank H. Brown, and bearing date the 17th of November, 1891, as also the deed of assignment for the benefit of creditors, executed by the said Henry Massey to the defendant, Joseph F. Wallace, and bearing date the 16th day of February, 1892, be, and they hereby are, vacated and set aside, as fraudulent and void; that the said Joseph F. Wallace be, and

he hereby is, appointed receiver of all the property and assets of Henry Massey, of every kind and description whatsoever, not exempt by law from levy and sale, with all the powers and duties, and subject to all the liabilities of such receiver, upon his entering into bond in the usual form, with two or more good sureties to be approved of by the clerk of this court, in the sum of four thousand dollars; that all assets now held by the said Joseph F. Wallace, and all securities taken by him as assignee, be held by him as receiver as aforesaid; that the defendant, Frank H. Brown, do account before a referee to be appointed by the court for all moneys which came into his hands, or which came into the hands of others for him, from the sale of goods, wares and merchandise out of the stock of H. Massey & Co. at Tirzah, in the county and State aforesaid, and for all goods taken thereout for his own use, between the 17th day of November, 1891, and the 16th day of February, 1892, and that he do pay over to the said Joseph F. Wallace, receiver as aforesaid, what upon such accounting shall be found to be due by him; that the said Joseph F. Wallace, as such receiver, do publish a notice to all the creditors of the said H. Massey & Co., and of Henry Massey individually, to present and prove their several and respective demands before him within a certain specified time; that said receiver report the assets, and the debts presented and proven, to this court with all convenient speed; and that the parties have leave to apply for further orders at the foot of this decree, upon the coming in of the reports of the referee and receiver.

Defendants Massey and Brown appealed.

*Messrs. W. B. Wilson, sr.,* and *C. E. Spencer,* for appellants.

*Mr. G. W. S. Hart,* contra.

April 18, 1893.   The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.   This was an action brought by the plaintiff to set aside a deed from the defendant Massey to his co-defendant Brown, as well as a deed of assignment from said Massey to the defendant Wallace, upon the ground of fraud

in both of said deeds.   It appears that Massey, who had been, for several years, carrying on business as a merchant in the little town of Tirzah, in York County, about seven miles from Yorkville, some time in the year 1891, and possibly before, became insolvent, and being pressed by his creditors for payments which he said he was unable to make, on the 17th of November, 1891, executed a deed to the defendant Brown, who was his father-in-law, conveying to'him his store house and lot, together with another lot in the town of Tirzah, and, also, his entire stock of goods in his store, with the furniture and fixtures.   This conveyance purports to have been made in consideration of indebtedness by Massey to Brown in an amount exceeding the sum of seven thousand dollars, which arose as far back as the 1st of February, 1887, and in payment of the same.   On the same day that this deed was executed, Brown signed a paper, appointing Massey his "agent and clerk in my store at Tirzah, to serve in said store;" and accordingly, Massey continued to carry on the business as formerly, to all appearances, so far as the public were concerned, the transfer not having been known to Massey's nearest neighbors or to his customers until the 25th of November, 1891, when the plaintiff, who, in the meantime, or rather on the morning of that day, had recovered judgment on some of his claims against Massey, sent the officer to levy on the goods in the store, when, for the first time, the fact of the transfer was made known.   The officer, nevertheless, did levy upon some of the goods, when they were replevied by Brown in an action of claim and delivery, and retained by Brown.

On the 16th of February, 1892, Brown reconveyed to the defendant Massey all the property which had been transferred to him by the deed of 17th of November, 1891, except the goods which had been sold in the interval between the execution of the two deeds, and except, also, the goods which had been levied upon under the trial justice executions obtained by the plaintiff herein against Massey on the 25th November, 1891. The exception in the deed of these goods is followed by this language: "If I succeed in recovering said articles, I hereby declare my purpose to turn over same, or their full value, to

such assignee as he (Massey) may name, he having declared his purpose to make an assignment for the benefit of creditors, in which purpose I fully concur." On the same day that this last mentioned conveyance was made, to wit, on the 16th February, 1892, Massey and Brown executed an agreement in writing, under seal, that in consideration of the reconveyance above mentioned, the debt of Massey to Brown, then amounting to over eleven thousand dollars, which had been extinguished by the conveyance of the 17th of November, 1891, should be revived. Accordingly, on the 16th of February, 1892, Massey executed to the defendant Wallace a deed of assignment, purporting to transfer all of the property of said Massey, except such as may be exempt under the homestead laws, for the benefit of his creditors. This deed of assignment contained, amongst other things, a provision preferring such of the creditors as should accept the terms of the assignment and execute releases within twenty-one days from the day appointed by the assignee for the first meeting of the creditors, which, it seems, was held on the 25th of February, 1892.

The case was heard on the testimony taken in open court, which is set out fully in the "Case." The Circuit Judge, after hearing the testimony and argument of counsel, subsequently filed his decree, which is likewise set out in the "Case," and should be incorporated in the report of the case, in which he rendered judgment setting aside both of the deeds assailed as fraudulent and void, appointing the defendant Wallace receiver, requiring defendant Brown to account for all the proceeds of goods sold or taken out of the store by him between the 17th of November, 1891, and the 16th of February, 1892, and directing the receiver to call in the creditors to prove their respective claims against Massey within a time to be specified by him. From this judgment the defendants appeal upon numerous grounds, which are set out in the record; but as they raise nothing but questions of fact or, at most, question the propriety of the inferences drawn by the Circuit Judge from the facts, we do not deem it necessary to set them out in detail here.

Under the well settled rule, the judgment of the Circuit Court must stand, unless it is without any evidence to sustain

it, or is manifestly against the weight of the evidence. We think it clear that neither of these things can be properly said of the judgment appealed from in this case. Where this is so, it is not usual, and would serve no good purpose for this court to enter into any discussion as to the correctness of the conclusions reached by the court below. Indeed, we think that the elaborate and thorough discussion of the circumstances of this case by the Circuit Judge in his decree is abundantly sufficient to vindicate the correctness of his conclusions, and it would be very difficult for us to add anything to what he has so well said. We may, however, mention some few points which have especially attracted our attention. The entire omission by Massey of any mention of the very large indebtedness to his father-in-law, in his statement of his condition made to Wagener & Co. on the 16th of July, 1891, as a basis of credit, and the similar omission in a similar statement made to Dun & Co. on the 28th of August, 1891, show either one of two things: either that there was really no such indebtedness or that Massey deliberately intended to deceive and mislead his creditors. His lame attempt to account for such omission, in his testimony in this case, by saying that he never expected to be called upon for payment of such alleged indebtedness, because he thought his wife's share of her father's estate would cover it, not only ignored the rights of his wife, over which he had no legal control, but is entirely inconsistent with his subsequent conduct. For when financial trouble was impending, he was quite ready to acknowledge this indebtedness, and to revive it after it had been extinguished, with a view to save his property from the claims of his just creditors.

While this may not have affected Brown, it is impossible from his subsequent conduct to avoid the inference that he was ready to co-operate with his son-in-law in his efforts to screen his property from his creditors. For while the mere fact that he indulged his son-in-law for more than four years on this large debt, which was increasing all the time, and on the contrary was paying him large accounts from year to year, without ever asking that any portion thereof should be credited on his large debt, might not be sufficient, standing by itself, to impli-

cate Brown; yet his subsequent efforts to assist his son-in-law in his effort to cover up a large part, if not the whole, of his property from his other creditors, are sufficient to excite a very strong suspicion, if not an absolute inference, that his real purpose was not to secure the payment of his debt, but to assist his son-in-law in screening his property from his creditors. True, Brown does say in his testimony that he knew very little about the extent of Massey's indebtedness; but in another part of his testimony he says that his reason for asking for the deed of 17th November, 1891, was that Massey was getting too much in debt—showing that he then thought that Massey was either insolvent or approaching that condition.

Then, too, the fact that the transfer of the store and stock of goods, if not concealed, was certainly not disclosed, not even to Massey's own brother, who was doing business within about one hundred feet of the store, nor to any of the customers trading at the store, until the officer levied on the goods on the 25th of November, 1891, when it became necessary to make the disclosure; this taken in connection with the fact testified to by McCants, the collecting agent of the plaintiff, and not denied by Massey in his testimony, that on the very day before the execution of the deed to Brown, 17th November, 1891, Massey promised McCants not to sell out or make an assignment, goes very far to justify the conclusion reached by the Circuit Judge. But again, the fact of the reconveyance by Brown to Massey goes far to show that the parties felt that the deed of 17th November, 1891, could not stand the test of investigation. For if that deed was *bona fide* and free from any taint of fraud, it is difficult to conceive of any good reason why the reconveyance should have been made. But we need not pursue the inquiry, as we are quite satisfied with the reasoning of the Circuit Judge on this point.

If, then, the deed of 17th November, 1891, was void for fraud, it is the same as if no such deed had ever been made; and the property which it purported to convey still remained the property of Massey. If so, then, as the deed of assignment to Wallace did not cover all of Massey's property, it would be void for that, if there were no other, reason. It

certainly did not cover that portion of the goods which had been levied on by Younger under his trial justice's executions and taken out of the store and placed in the possession of Brown before the deed of assignment was executed, and were not covered by it. The fact, stated in the "Case," that during the argument on Circuit, Brown, through his counsel, offered to return the property levied upon by Younger, and, also, to have his wife's dower released on the deed of reconveyance, and that until this was done, he consented that he should be excluded from any dividend on his claims, cannot affect the questions which the court was called upon to decide. Those questions could only be considered in the light of the circumstances existing at the time the deed of assignment was executed or, at least, at the time this action was commenced. If it was void, then no subsequent action of the parties can be considered in determining its validity. While, therefore, this offer of Brown may have its effect on the present moral aspects of the transaction, it can have no effect upon the legal rights of the parties.

We, therefore, without going further into the consideration of the facts of the case, are content to rest our conclusion upon the reasoning of the Circuit Judge as to the invalidity of the deed of assignment, as well as to the deed of the 17th November, 1891.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.