19113

The STATE, Respondent, v. E. E. JORDAN, Appellant

(177 S. E. (2d) 464)

*Messrs. W. N. Moore, Jr.,* and *Kermit S. King,* of Colum-
bia, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General, C. Pinckney Roberts, Assistant Attorney General,* and *Michael W. Tighe,* of Columbia, and *George F. Coleman, Solicitor,* and *John Martin,* of Winnsboro, *for Respondent,*

October 28, 1970.

Moss, Chief Justice.

E. E. Jordan, the appellant herein, was brought to trial at the 1969 November Term of the Court of General Sessions for Fairfield County before The Honorable G. Badger Baker, and a jury, upon an indictment containing two counts: (1)

breach of trust with fraudulent intent, Section 16-365 of the Code; and (2) obtaining property by false pretenses, Section 16-366 of the Code. At the close of the testimony in behalf of the State, the appellant made a motion for a directed verdict. At that time the solicitor dismissed count two of the indictment, leaving only the first count charging breach of trust with fraudulent intent. The trial judge overruled the motion of the appellant for a directed verdict as to this count. At the close of all the testimony, a like motion was made by the appellant and such was also refused. The jury found the appellant guilty as charged. The appellant prosecutes this appeal from his conviction and sentence.

The indictment charged that the appellant, on July 17, 1968, received, in trust, from Gary F. Bass, Jr., in cash, the sum of $5,400.00, for the purpose of purchasing for Bass 400 shares of the capital stock in Universal Business Machines, Inc., and that the appellant did breach such trust with a fraudulent intention and appropriated the aforesaid sum of money to his own use and purpose.

The first question for decision is whether the trial judge erred in refusing to grant the motion of the appellant for a directed verdict on the ground that fraudulent intent was not proven.

In deciding whether the court erred in not directing a verdict in favor of the appellant, we must view the testimony in the light most favorable to the State. When a motion for a directed verdict is made, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Rayfield,* 232 S. C. 230, 101 S. E. (2d) 505; *State v. Hyder,* 242 S. C. 372, 131 S. E. (2d) 96; and *State v. Wells,* 249 S. C. 249, 153 S. E. (2d) 904.

Proof beyond a reasonable doubt of fraudulent intention is necessary before the crime of breach of trust is complete. *State v. McCann,* 167 S. C. 393, 166 S. E. 411; and *State v. Owings,* 205 S. C. 314, 31 S. E. (2d) 906. However, fraudulent intent is a condition of the mind beyond the reach of the senses, usually kept secret, and can only be proved by unguarded expressions, conduct and circumstances generally. *Roddey v. Erwin,* 31 S. C. 36, 9 S. E. 729; and *Younger v. Massey,* 39 S. C. 115, 17 S. E. 711.

The appellant was the president, operating manager and principal stockholder in Consolidated Securities, Inc., a stock brokerage firm doing business in the State of South Carolina. It is uncontradicted that Gary F. Bass, Jr., on July 17, 1968, delivered to the appellant $5,400.00 in cash, in payment for 400 shares of the capital stock of Universal Business Machines, Inc., at the quoted price of $13.50 per share. Receipt of this sum was acknowledged by the appellant in writing and Consolidated Securities, Inc. later confirmed this purchase by letter.

Gary F. Bass, Jr. testified that at no time after July 17, 1968, did he ever receive the 400 shares of stock so purchased nor did the appellant ever return the purchase price thereof, even though repeated attempts to secure the delivery of the stock or the return of the money was made by him.

There was testimony by one Adam C. Hart that on both June 27, 1968 and on July 3, 1968, he paid over to the appellant $1,000.00 for the purchase of 100 shares of Universal Business Machines, Inc., at $10.00 per share. Hart did not receive either that a portion of it had been so used. He also testified that the appellant was paying his own salary and buying items for his personal use with money that had been entrusted to him to purchase UBM stock. It thus appears from the testimony of the receiver that the appellant was diverting money received in trust for the purchase of UBM stock to pay the operating expenses of Consolidated

Securities, Inc., including his own salary and the purchase of items for his personal use and for investment in the several ventures hereinbefore mentioned, rather than applying such in compliance with the trust.

The appellant, testifying in his own behalf, detailed his and his company's method of operation in selling UBM stock and transferring such stock to the purchasers. He admitted that on July 17, 1968, in Fairfield County, he received from Gary F. Bass, Jr., $5,400.00 in payment of 400 shares of the capital stock of Universal Business Machines, Inc. He also admitted that there had been paid over to him by the four witnesses who testified for the State, money for the purchase of shares of UBM stock mentioned in their testimony, and was holding the money so paid over for that purpose. He testified that he deposited the money so received in a general account to the credit of Consolidated Securities, Inc. in The Commercial Bank and Trust Company, Columbia, South Carolina. The explanation of the appellant as to what he did with the money so received is revealed from his own testimony. We quote from the record the testimony of the appellant which shows that he applied the funds so received to a purpose other than that for which it was entrusted to him.

"Q. What happened, the money that was paid to you from Mr. Bass, in July, actually you had spent that money, isn't that right? For some other purpose other than buying the stock to deliver to him, isn't that right?

"A. That specific money, yes, sir.

"Q. And any other money that you had on that date, if you were putting it all together in one account, whatever money that you had in your possession and certainly the money paid to you by Mr. Bass on that date, you had spent it for some other purpose other than buying stock to furnish to Mr. Bass, Jr., isn't that right?

"A. Yes, sir."

\* \* \*

"Q. * * * The money that was paid over to you for sale of stock, in this company, didn't you use that, some of that money for your personal use?

"A. Probably so."

* * *

"Q. And actually what you were doing with their money, you were speculating with their money, isn't that right? That is, if everything went well just as you told the lawyer when he was talking to you about it, if everything went well of course it would have worked out fine and the stock would have been delivered, that's right, isn't it?

"A. Yes, sir."

In the case of *State v. McCann*, 167 S. C. 393, 166 S. E. 411, it appears that the prosecuting witness had received a check from a life insurance company in the amount of $730.00 in payment of the death benefits to which she was entitled as beneficiary under the policy. She endorsed the check and turned it over to the appellant, instructing him to pay certain bills for her. The appellant cashed the check, paid the bills he was instructed to pay, and also paid his own grocery bill in the amount of more than $200.00. In upholding a conviction for breach of trust with fraudulent intent, this court said:

"The evidence showing that the appellant used some $200 of the money he received on the check for the payment of his own grocery bill was sufficient to take the case to the jury on the question of his fraudulent intention. In addition, the testimony went to show that the appellant refused the demand of the prosecuting witness that he make good the amount used by him for the payment of the grocery bill, and that he would not permit her to see the receipted bill, which he claimed to have paid."

It is our conclusion that the evidence of the use of the funds of Gary F. Bass, Jr., by the appellant for purposes other than to purchase UBM stock was sufficient to create a jury question on the issue of fraudulent intent. There is, in this case, evidence of fraudulent intent

when the appellant departed from his duty to use the money he had received in payment for UBM stock and diverted it to other purposes.

It is our conclusion that there was no error on the part of the trial judge in refusing the motion of the appellant for a directed verdict on the ground that the State had failed to prove fraudulent intent beyond a reasonable doubt. This was a question for the jury.

The appellant further contends that the trial judge erred in failing to grant his motion for a directed verdict on the ground that there is no evidence in this record that the particular money delivered to the appellant by Gary F. Bass, Jr. was appropriated or converted by the appellant to his own use. The exception posing this question is without merit. The appellant admitted in his testimony, heretofore quoted, that the money paid to him by Gary F. Bass, Jr., in trust, for the purchase of UBM stock, was spent for some other purpose other than buying stock for Bass.

The contention of the appellant that the trial judge erred in failing to grant a directed verdict on the ground that the proof showed the commission of the crime of obtaining property by false pretenses, rather than a breach of trust with fraudulent intent, raises no issue for determination by us because such was not a ground of his motion for a directed verdict. This court has, in numerous cases, held that it will not consider a question on appeal which was not presented in the court below. *State v. Pearson,* 223 S. C. 377, 76 S. E. (2d) 151, and *State v. Rutland,* 243 S. C. 176, 133 S. E. (2d) 126.

The appellant lastly contends that the Court of General Sessions for Fairfield County lacked jurisdiction to try him for breach of trust with fraudulent intent, in that there was no proof that fraudulent intent existed at the time he received the money in question from Gary F. Bass, Jr.

Admittedly, the appellant was entrusted in Fairfield County with $5,400.00 by Gary F. Bass, Jr., for the pur-

pose of purchasing for him 400 shares of UBM stock. Whether the appellant, at the time he received the money from Bass in Fairfield County, formed the intention and purpose of fraudulently appropriating it to his own use was, in our view, a question of fact for jury determination.

We think the case of *State v. McCann*, 167 S. C. 393, 166 S. E. 411, is controlling and dispositive of the issue made by the appellant. It appears that McCann received from the prosecuting witness an insurance check in which she was the payee and such was endorsed by her and turned over to him, in Aiken County, South Carolina, with instructions to pay certain bills for her and return the balance of the check to her. McCann cashed the check and paid the bills he was instructed to pay and also his own grocery bill in the amount of more than $200.00 in Augusta, Georgia. Upon his trial in Aiken County for breach of trust with fraudulent intent, McCann took the position that the Court of General Sessions of said County did not have jurisdiction since the crime charged against him, if committed by him at all, was not committed in Aiken County but in Augusta, Georgia. This contention was rejected and in the course of the opinion, it was said:

"* * * So, if one is intrusted with property in one county, and there forms the intention of fraudulently appropriating it to his own use, and, pursuant to such intention, goes with it to another county, where he accomplishes his object by pawning it, his crime may be deemed committed in the place where he received the property and formed the criminal intent. 9 R. C. L. 1293.

"To the same effect is this statement: 'And it has been held that an indictment will lie in the state where defendant refused to account, and also in the state in which he received the money, if there was evidence of an intent to defraud at the time the money was received, or at any time while defendant remained in that state.' 16 C. J. 165."

We quote further from the *McCann* case, the following:

"But from the authorities cited above, the crime of breach of trust with fraudulent intention does not depend alone

upon the act of conversion. 'The instrumentalities' may have been 'set in motion within the jurisdiction of the court' of Aiken county. 9 R. C. L., *supra*. Having been 'intrusted with property in' Aiken county, if the appellant, in that county, formed 'the intention of fraudulently appropriating it to his own use, and, pursuant to such intention', went 'with it to another county (or to Georgia) where he accomplished his object, * * * his crime may be deemed committed in the place where he received the property and formed the criminal intent.' "

In the light of the factual situation revealed by this record, there was sufficient proof to support a finding that fraudulent intent did exist at the time the appellant received the money in question from Gary F. Bass, Jr. in Fairfield County even though the actual conversion may have taken place in some other county.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.